COMMONWEALTH *vs.* ALLEN D. GRACE. No. 96-P-1895. July 25, 1997. *Practice, Criminal,* Disclosure of identity of surveillance location, Instructions to jury. *Evidence,* Government privilege of nondisclosure of a surveillance location. *Identification. District Court,* Jurisdiction. *Conspiracy.*

After a jury trial in New Bedford District Court, the defendant was convicted of distribution of heroin (G. L. c. 94C, § 32), distribution of heroin within 1,000 feet of a school zone (G. L. c. 94C, § 32J), and conspiracy to violate the controlled substance laws (G. L. c. 94C, § 40). He was sentenced to two and one-half years to be served in a house of correction on the distribution charge and two years to be served consecutively on the school zone charge; the conspiracy conviction was placed on file. On appeal, the defendant argues that the judge improperly refused to permit him to elicit the exact location of the "secret" surveillance post from which he was observed conducting a drug transaction and that the judge's refusal to instruct the jury on honest but mistaken identification was error. He also maintains that his conviction on the conspiracy charge must be reversed because the District Court lacked jurisdiction over the offense. We reverse the conspiracy conviction and affirm the remaining convictions.

At trial, Officer Christopher Dextrador testified that at approximately 3 P.M. on October 4, 1995, he was conducting surveillance in the vicinity of Wing Street and Acushnet Avenue in the city of New Bedford, when he observed the defendant, whom he knew and recognized, speaking with another man. That man, later identified as Edwin Prince, handed the defendant money and in exchange received two packets which were later found to contain heroin. Shortly after the men completed their transaction, police officers apprehended Prince. Dextrador lost sight of the defendant however, and he was not arrested until approximately 5 P.M., when he returned to the area wearing the same clothing.

1. *Disclosure of the secret surveillance post.* Dextrador testified that he observed the drug transaction from a distance of approximately 100 feet, that he had a clear, unobstructed view, and that he used binoculars to enhance his vision. He further stated that he made the observations from a "secret" surveillance post. On cross-examination, defense counsel attempted to elicit further information regarding Dextrador's post but, upon the Commonwealth's objection, was precluded from inquiring as to its precise location. The defendant now argues that the location of Dextrador's surveillance post should have been disclosed because it would have enabled him more thoroughly to cross-examine the officer regarding the reliability of his identification.

"[A] fair and full cross-examination to develop facts in issue or relevant to the issue is a matter of absolute right and is not a mere privilege to be exercised at the sound discretion of the presiding judge." *Commonwealth* v.

*Lugo*, 406 Mass. 565, 572 (1990) (citations omitted). Under certain circumstances, however, the Commonwealth possesses a "surveillance location privilege," which protects the precise location of a secret surveillance post from disclosure. *Ibid.* The location of a purportedly secret surveillance post must generally be disclosed if it is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 570, quoting from *Roviaro* v. *United States*, 353 U.S. 53, 60-61 (1957). Moreover, a defendant seeking such information need not make "a specific showing of just what the evidence would have proved and how far he [would be] prejudiced by the withholding." *Commonwealth* v. *Johnson*, 365 Mass. 534, 547 (1974). It is not enough, however, for a defendant seeking to overcome the privilege simply to claim a need to know the location of the surveillance post. Rather, he is under an affirmative "obligation to show an exception to the privilege," *Commonwealth* v. *Swenson*, 368 Mass. 268, 276 (1975), and must therefore make "a preliminary showing that disclosure [of the information] would provide material evidence needed" to present his case to the jury. *Commonwealth* v. *Hernandez*, 421 Mass. 272, 276 (1995).

Although there is no record of the discussion at side bar immediately after the Commonwealth's objection was sustained, defense counsel's comments during a lengthy colloquy that occurred after Dextrador left the stand, indicate that his only objection to the limitations placed upon his cross-examination of the officer was based on his belief that he was entitled to "unlimited cross-examination" on the issue of bias. Indeed, although the defendant had ample opportunity to raise the issue of the location of the purportedly secret surveillance post, he explicitly declined to do so in the following exchange:

THE COURT: "And do you say to me that . . . a specific location must be revealed in this type of situation?"

DEFENSE COUNSEL: "No, not at all, your Honor. . . . I'm saying [the defendant] has been prejudiced [] because . . . . I have to be allowed unlimited cross-examination to show bias. And [] I don't think that I was, and I'll rest on that point."

The defendant failed to meet his "obligation to show an exception to the privilege" that the surveillance location remain secret. *Commonwealth* v. *Swenson*, 368 Mass. at 276. Accordingly, there was no error.

2. *Instruction on honest but mistaken identification.* At the close of the evidence, the judge refused defense counsel's request that he give an instruction on the possibility of an honest but mistaken identification. See *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983). The defendant argues that the circumstances surrounding Dextrador's identification and the fact that the defendant's sole defense was mistaken identification, made this instruction appropriate.

"Fairness to a defendant compels the trial judge to give an instruction on the possibility of honest but mistaken identification when the facts permit it and when the defendant requests it." *Ibid.* This is not a case, however, in which the state of the evidence supported an instruction on honest but mistaken identification. The defendant did not take the "stand to testify to an alibi or assert[] an alibi through other witnesses." *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738, 743 (1978), *S.C.*, 378 Mass. 296 (1979). See also *Commonwealth* v. *Stoddard*, 38 Mass. App. Ct. 45, 47-48 (1979) (mistaken identification instruction may not be required where victim and defendant were well acquainted and defendant did not present an alibi). Moreover, Dex-

trador testified that he observed the defendant clearly from his vantage point 100 feet from the scene of the crime, during daylight hours. He further stated that his view was unobstructed and that he was using binoculars to enhance his vision. Finally, he testified that he knew and recognized the defendant on October 4, 1995, and identified him at trial. See *Commonwealth* v. *Sowell*, 34 Mass. App. Ct. 229, 237 (1993) (no error where witness knew defendant and identified him by name as perpetrator of the crime).

Nothing in the record suggests that Dextrador did not know the defendant well enough to recognize him under these circumstances. Indeed, although defense counsel argued during his closing argument that "Dextrador [was] so far away [from the defendant] that he need[ed] binoculars," he never challenged Dextrador's familiarity with the defendant or the reliability of his identification by exploring the circumstances under which he and the defendant were acquainted, in an apparent tactical decision characterized by the judge as "very wise." In any event, although he did not give the precise charge requested by the defendant, the judge instructed the jury that in evaluating the weight and credibility of the testimony, they could consider the witness's "opportunity to observe the facts about which he testifie[d]," and properly emphasized the fact that the Commonwealth had to prove every element of the crimes beyond a reasonable doubt. See *Commonwealth* v. *Ramey*, 368 Mass. 109, 114 (1975). Accordingly, we discern no risk of prejudice to the defendant.

3. *Jurisdiction.* The defendant correctly contends that the District Court lacked jurisdiction to hear the charge alleging conspiracy to distribute heroin, which is a ten-year felony, and the Commonwealth concedes error. See G. L. c. 218, § 26 (conferring original jurisdiction over "all felonies punishable by imprisonment in the State Prison for not more than five years"). See also Smith, Criminal Practice and Procedure § 32 (2d ed. 1983) (maximum penalty is dispositive in determining whether District Court has jurisdiction over "those felonies not specifically made part of [its] jurisdiction"); *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 386, 388 n.8 (1993) (District Court properly dismissed count alleging conspiracy to violate controlled substance laws for lack of jurisdiction). Compare *Berlandi* v. *Commonwealth*, 314 Mass. 424, 441 (1943) (holding that under G. L. [Ter. Ed.] c. 218, § 26, as appearing in St. 1938, c. 365, § 1, an earlier version of the current statute, the District Court is without jurisdiction to punish conspiracies). As noted earlier, however, the defendant's conviction on this charge was filed. "Absent exceptional circumstances, we do not consider appeals on assignment of error on indictments placed on file since no appeal may come before us until after judgment, which in criminal cases is the sentence." *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975). Here, however, nothing in the record indicates that the defendant consented to the filing of the conspiracy conviction. Accordingly, it is before us and must be set aside. See *ibid.* (defendant entitled to consideration of the merits of his claim where consent was not obtained before placing conviction on file).

The verdict on the conspiracy charge is set aside. The judgments are affirmed in all other respects.

*So ordered.*

*Peter M. Dempsey* for the defendant.

*Shaun McLean*, Special Assistant District Attorney, for the Commonwealth.